Argued and submitted January 4, judgment of the Tax Court affirmed April 14, 1994

Linford COULTAS,
Jack T. Cassette, Horace Thompson, John Ament,
Bennie L. Bennett, Virginia Cossetter, Paul R. Johnson,
Warren Kadas, Alice R. Stickell, Joan Robertson,
Richard J. Fowler, Donald E. Larson, Jack Ledbetter,
Velma Thompson, Ralph K. Odell and Jessie C. Coon,
*Appellants,*

*v.*

CITY OF SUTHERLIN,
*Respondent.*

(OTC 3267; SC S40261)

871 P2d 465

Greg Wasson, Salem, argued the cause and filed the briefs for appellants.

Harry Gandy, Sutherlin, argued the cause and filed the brief for respondent.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Unis, and Graber, Justices.

CARSON, C. J.

## CARSON, C. J.

Plaintiffs appeal a dismissal of their complaint by the Tax Court, which resulted from two orders issued pursuant to Tax Court Rule (TCR) 21, one granting defendant's motion to strike[1] and the other granting defendant's motion to make definite and certain. For the reasons that follow, the judgment of the Tax Court is affirmed.

In May 1992, the voters of the City of Sutherlin voted on two ballot measures referred to them by the Sutherlin City Council. Ballot Measure 10-06 proposed to increase the city's tax base from $139,055 to $873,320. Ballot Measure 10-07 proposed to amend the Sutherlin City Charter to provide that "[t]he [City] Council may not levy a property tax for the general city operations for a fiscal year greater than the city's tax base as defined in subsection (2) of this section." Subsection (2) provided that the city's tax base is one of three amounts: (1) the amount approved in Ballot Measure 10-06; (2) an amount approved by the voters; or (3) "[t]he amount levied the preceding year that was within the constitutional limitation provided in Article XI, section 11 of the Oregon Constitution plus 2%, if approved by unanimous vote of the entire Council." Both ballot measures passed. On July 14, 1992, the City of Sutherlin filed notice of its tax levy with the Douglas County Assessor's Office.

Plaintiffs brought this claim in the Tax Court on August 13, 1992. Plaintiffs have made three basic arguments throughout this litigation. First, plaintiffs claim that, under Article XI, section 2, of the Oregon Constitution,[2] a taxing unit may not, without a vote of the people, levy a tax that incorporates some, but not all, of the six-percent automatic increase provided in Article XI, section 11(2).[3] Plaintiffs

---

[1] Although the Tax Court's order stated that it was granting defendant's motion to strike, the substance of the order appears to grant a motion to dismiss. *Compare* TCR 21 A (motion to dismiss) *with* 21 E (motion to strike).

[2] Article XI, section 2, provides, in part: "The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, *subject to the Constitution* * * *." (Emphasis added.)

[3] Article XI, section 11, provides, in part:

"(1) * * * [N]o taxing unit, whether it be the state, any county, municipality, district or other body to which the power to levy a tax has been delegated, shall in any year so exercise that power to raise a greater amount of revenue than

argue that the City of Sutherlin may not "deviate from the limitation and procedures contained in the Constitution." Plaintiffs contend that, because the two-percent limit on automatic increases (Measure 10-07) was "invalid from its inception" under Article XI, section 11, the new tax base (Measure 10-06), *also* is invalid because the two-percent limitation was offered as a "sweetener," thus violating Article II, section 1, of the Oregon Constitution,[4] which protects free and equal elections.

The Tax Court granted defendant's motion to strike plaintiffs' first claim. The Tax Court held that, "[i]f plaintiffs are alleging defendant has imposed limits on itself which are less than the six percent limit found in the constitution, they fail to allege a claim."[5]

Second, plaintiffs challenge the summary statement contained in the ballot title of Ballot Measure 10-06 on the ground that the ballot title stated that the old tax base had "since proved inadequate." Plaintiffs claim that the use of the word "inadequate" was not "impartial" and thus violated

---

its tax base as defined in section (2) of this section. The portion of any tax levied in excess of any limitation imposed by this section shall be void.

"(2) The tax base of each taxing unit in a given year shall be one of the following:

"(a) The amount obtained by adding six percent to the total amount of tax lawfully levied by the taxing unit, * * * in any one of the last three years in which such a tax was levied by the unit; or

"(b) An amount approved as a new tax base by a majority of the legal voters of the taxing unit voting on the question submitted to them in a form specifying in dollars and cents the amount of the tax base in effect and the amount of the tax base submitted for approval. The new tax base, if approved, shall first apply to the levy for the fiscal year next following its approval."

[4] Article II, section 1, provides: "All elections shall be free and equal."

[5] The Tax Court would have granted defendant's motion for several alternative reasons. The Tax Court stated that, if plaintiffs were claiming that defendant exceeded its authority, "such claim would be outside the jurisdiction of this court." The Tax Court also concluded that plaintiffs failed to state a claim when they alleged that the two-percent limit was placed on the ballot to increase the attractiveness of the new tax base. Last, the Tax Court concluded that plaintiffs' allegations that the "two percent limitation was 'invalid from its inception' and the actions related thereto violate Article II, section 1, of the Oregon Constitution and ORS 260.665" were not within the jurisdiction of the Tax Court. Because we uphold the order granting the motion to strike on the first ground, we need not reach those additional grounds.

ORS 310.390(1)(c).[6] The Tax Court concluded that the word "inadequate" was "used for explanation as permitted by ORS 310.390(1)(c)."

Third, plaintiffs allege that the city's statement in the ballot title that the old tax base was "derived from a tax base approved by voters in 1911" violated ORS 310.390(2),[7] which requires that ballot title summary statements be "plainly worded and factual."[8] As to that claim, the Tax Court granted defendant's motion to make definite and certain. Plaintiffs did not replead the claim, and the Tax Court dismissed the complaint.

We first consider whether the two-percent limit, passed as ballot measure 10-07, complies with Article XI, section 11, of the Oregon Constitution. As this court has stated before:

"In interpreting a constitutional provision adopted through the initiative process, our task is to discern the intent of the voters. The best evidence of the voters' intent is the text of the provision itself. The context of the language of the ballot measure may also be considered; however, if the intent is clear based on the text and context of the constitutional provision, the court does not look further." *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993). (Citations and footnotes omitted.)

■ Article XI, section 11, originally was adopted by the people in a 1916 initiative election and since has been amended by referendum four times. Consequently, as this involves an initiated constitutional provision, we first look to the text and context of Article XI, section 11. In examining the

---

[6] ORS 310.390(1)(c) provides:

"Notwithstanding ORS 250.035, the ballot title of any measure which authorizes a tax levy in addition to the tax base provided in section 11, Article XI of the Oregon Constitution or which establishes a new tax base shall consist of:

"* * * * *

"(c) A concise and *impartial* statement of not more than 175 words, explaining the chief purpose of the measure and giving reasons for the measure." (Emphasis added.)

[7] ORS 310.390(2) provides, in part: "The statement in the ballot title required in this section shall be plainly worded and factual * * *."

[8] Plaintiffs claim that "[t]he inclusion of the phrase 'approved by the voters in 1911' violates [ORS 310.390(2)], as the city knew that such statement was false or, in the alternative, had no reason to believe it to be true."

text and context to determine the meaning of a constitutional provision adopted by the people by initiative or referendum, this court typically gives words of common usage their plain, natural, and ordinary meaning. *Cf. PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (setting forth method of statutory interpretation).

Article XI, section 11(1), provides that "no taxing unit * * * to which the power to levy a tax has been delegated, shall in any year so exercise that power to raise a *greater amount of revenue than its tax base* as defined in subsection (2)." (Emphasis added.) Subsection (2) provides two definitions for the term "tax base." One is "[a]n amount approved as a new tax base by a majority of the legal voters." Or Const, Art XI, § 11(2)(b). The second, at issue here, is "[t]he amount obtained by adding six percent to the total amount of tax lawfully levied by the taxing unit * * * in any one of the last three years in which such a tax was levied by the unit." Or Const, Art XI, § 11(2)(a).

The focus of Article XI, section 11, is on preventing a taxing unit from exceeding its tax base. Article XI, section 11(1), expressly prohibits a taxing unit from levying an amount greater than its tax base. It does not address the issue of a taxing unit that chooses to levy an amount less than its tax base.

In *School Dist. 1, Mult. Co. v. Bingham et al*, 204 Or 601, 605, 283 P2d 670, *mod*, 204 Or 601, 606-13, 284 P2d 779 (1955), this court recognized the foregoing interpretation of Article XI, section 11. In that case, this court held that "there is nothing in the law requiring a taxing unit in levying taxes to utilize the full tax base voted by the people." *Id*. at 605-06. Article XI, section 11(2), provides that a tax base may be created either by automatically adding six percent to a previous levy or by seeking a vote of the people. Article XI, section 11(1), does not distinguish between the two types of tax bases. Accordingly, as with a tax base created by a vote of the people, there is nothing in Article XI, section 11, that requires a taxing unit to utilize the full tax base created by adding six percent to a previous levy. Article XI, section 11(1), is concerned with taxing units that might attempt to *exceed* their tax bases. It does not mandate that a taxing unit utilize its entire tax base, regardless of whether that tax base was

created by a vote of the people or by the six-percent automatic increase.[9]

■    Moreover, the context of Article XI, section 11, is helpful in ascertaining the meaning of the provision. The context of a constitutional provision includes other provisions in the constitution that were adopted at the same time. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994). Article XI, section 11(1), provides a remedy for failure to comply with its requirements. The last sentence of Article XI, 11(1), provides: "The portion of any tax *levied in excess of any limitation imposed by this section* shall be void."[10] (Emphasis added.) Under that provision, if a taxing unit fails to comply with the taxing limit provided in Article XI, section 11, the remedy is to void the amount of the levy that *exceeds* the tax base. The remedy is concerned only with alleviating the effects of overtaxation by a taxing unit; it does not address the possibility of "undertaxation." Accordingly, the text and context of Article XI, section 11, make clear that the six-percent limitation gives taxing units authority to levy any amount of taxes not exceeding the tax base as defined in Article XI, section 11(2).

■    It is an unusual case in which the text and context of a constitutional provision reflect the intent of the voters so clearly that no alternative reading of the provision is possible.[11] Ordinarily, this court will examine the history of a constitutional provision if there is a plausible alternative reading presented to the court. Nonetheless, this is one of those unusual cases in which the text and context make the meaning of the provision undeniably clear. We hold that, under Article XI, section 11(1) and (2)(a), a taxing unit has the authority to levy *any amount not exceeding* the amount levied in any of the last three years in which a tax was levied

---

[9] There also is nothing to suggest that a taxing unit may not formalize its intent to levy less than the six-percent automatic increase through an amendment to the city charter.

[10] That remedy first was passed as part of the 1916 initiative originally creating Article XI, section 11. Thus, the remedy is part of the context of the provision at issue here.

[11] As this court has noted before, "courts rarely see disputes over interpretation when the opposing party cannot show a possible alternative reading of the words, which it claims to be correct in context." *Lipscomb v. State Bd. of Higher Ed.*, 305 Or 472, 485, 753 P2d 939 (1988).

plus six percent.[12] In addition, we hold that a taxing unit has the authority to formalize its intent to regularly levy less than its tax base. The Tax Court did not err in striking plaintiffs' claim.

■     We now reach plaintiffs' second and third contentions. Plaintiffs challenge the Tax Court's holding that the use of the word "inadequate" in the ballot title summary statement was not impartial as required by ORS 310. 390(1)(c). Plaintiffs also allege that the city's statement in the ballot title that the old tax base was "derived from a tax base approved by voters in 1911" violated ORS 310.390(2), which requires that summary statements be "plainly worded and factual," and that the Tax Court should not have granted defendant's motion to make definite and certain.

We hold that both of those claims are challenges to the ballot title of Measure 10-06 and were not filed timely or in the proper court; thus, we are precluded from reaching the merits of plaintiffs' second and third contentions. Plaintiffs argue that, because ORS 310.390(1) begins with the phrase "(n)otwithstanding ORS 250.035 [general provision for form of ballot title]," the procedures for city ballot title challenges, set forth in ORS 250.296,[13] do not apply to ballot title challenges arising under ORS 310.390.

Plaintiffs' argument is unconvincing. ORS 250.255 provides: "ORS 250.265 to 250.346 [including ORS 250.296] applies to the exercise of initiative or referendum powers regarding a city measure under section 1, Article IV, Oregon Constitution [state and local referendum and initiative

---

[12] Because we hold that Article XI, section 11, expressly allows a taxing unit to levy any amount not exceeding its tax base, we need not address the parameters of the home rule provision contained in Article XI, section 2.

[13] ORS 250.296 provides, in part:

"Any elector dissatisfied with a ballot title filed with the city elections officer by the city attorney or the city governing body, may petition *the circuit court of the judicial district* in which the city is located seeking a different title and stating the reasons the title filed with the court is insufficient, not concise or unfair. The petition * * * must be filed *not later than the seventh business day after the title is filed* with the city elections officer. The court shall review the title and measure to be initiated or referred, hear arguments, if any, and certify to the city elections officer a title for the measure which meets the requirements of ORS 250.035 and 250.039." (Emphasis added.)

powers], unless the city charter or ordinance provides otherwise." This claim challenges the ballot title of a ballot measure referred to the voters of the City of Sutherlin by the city council, and neither party alleges that the City of Sutherlin has otherwise provided a method of challenging ballot titles. Accordingly, ORS 250.296 applies to this challenge.

Plaintiffs argue to the contrary that the procedures for challenging local tax levies, found in ORS 294.485, apply to ballot title challenges arising under ORS 310.390. ORS 294.485 gives 10 interested taxpayers the right to bring a challenge in the Tax Court to a tax levy "made contrary to the provisions of ORS 294.305 to 294.520, 294.555 and 294.565 or any other law relating to the making of tax levies." Under ORS 294.485(2)(a), the challenge to the levy must be brought "[w]ithin *30 days* after the notice of tax levy is filed with the county assessor."[14] (Emphasis added.) We reject plaintiffs' contention that ORS 294.485 exempts a plaintiff who challenges a tax base ballot title from the general procedural requirements for ballot title challenges. The provisions set forth in ORS 294.485(1) deal with local budgeting procedure. *See* ORS 294.305 ("ORS 294.305 to 294.520, 294.555 and 294.565 shall be known as the Local Budget Law."). This case involves a challenge to a ballot title, not a challenge to the preparation of a local budget. In this case, plaintiffs' reliance on ORS 294.485(2)(a) was misplaced.

We therefore hold that a plaintiff challenging a ballot title under ORS 310.390 must comply with the requirements for ballot title challenges set forth in ORS 250.296.[15] ORS 250.296 requires that a plaintiff challenging a city ballot title bring a challenge in the local circuit court within seven business days of the filing of the measure. Plaintiffs here did not comply with either requirement. Therefore, plaintiffs' challenge was untimely and in the wrong court, and we are precluded from reaching the merits of plaintiffs' challenge.

The judgment of the Tax Court is affirmed.

---

[14] Plaintiffs brought this challenge within 30 days of the filing of the tax levy.

[15] In the alternative, plaintiffs argue that this is not a ballot title challenge, but rather a challenge to a *levy* because the levy is based on a tax base that is void because of defects in the ballot title. We reject that argument, because to accept it would be to allow any person with an objection to a ballot title to wait until after the election to challenge the contents of the ballot title on the ground that the later levy is based on a void tax base.