# IN THE TAX COURT OF THE
# STATE OF OREGON

## GILL et al
### *v.*
## BEAVERTON SCHOOL DISTRICT 48
### *and*
## DEPARTMENT OF REVENUE,
### *Intervenor*

(TC 3982)

Gregory W. Byrne, Byrne & Barrow, Portland, represented petitioners.

John W. Osburn, Miller, Nash, Wiener, Hager & Carlsen, Portland, represented respondent.

Robert W. Muir, Assistant Attorney General, Department of Justice, Salem, represented intervenor.

Decision for respondent rendered August 19, 1996.

**CARL N. BYERS, Judge.**

Respondent school district and its voters authorized the issuance of general obligation bonds to finance the construction of new schools and to repair, improve, and upgrade existing schools. Petitioners contend that, to the extent bond proceeds are used to make repairs and purchase computers or other equipment, the bonded indebtedness is not incurred for "capital construction or improvements" within the meaning of Article XI, section 11b, of the Oregon Constitution (section 11b). Accordingly, petitioners seek a ruling that taxes imposed by respondent to retire the bonded indebtedness will be subject to the limitations imposed by section 11b. The petition and response raise legal issues which have been submitted to the court on cross motions for summary judgment.

## BACKGROUND

Respondent's board of directors determined that respondent needed financing for additional school facilities. After a number of meetings, it adopted Resolution 96-5 proposing to incur bonded indebtedness in the amount of $146,890,000

"to finance the costs of acquisition of land, and construction, remodeling, improving, repairing, equipping and furnishing district facilities, including acquisition and installation of new technology improvements * * *."

The proposal was submitted to the voters of the district and approved by a majority vote on March 12, 1996. The ballot title summary provided a slightly more detailed explanation by stating that the financing was to allow the district to build four new schools (2 elementary, 1 middle school, 1 high school) and additional classroom capacity, make physical improvements to existing facilities (*e.g.*, roofing and plumbing), buy land for school sites, renovate facilities to update learning centers, and equip facilities with computers and technology. The ballot title expressly stated:

"If the bonds are approved they will be payable from taxes on property or property ownership that are not subject to the limits of Section 11b, Article XI of the Oregon Constitution."

Section 11b imposes dollar limits on property taxes that a government unit may impose to fund its operations. The section limits taxes for public school systems to $5 per $1,000 of real market value and taxes for government operations other than schools to $10 per $1,000 of real market value. The section provides a number of exceptions; the relevant one here reads as follows:

"The limitations of subsection (1) of [section 11b] apply to all taxes imposed on property or property ownership except

"* * * * *

"(b)  Taxes imposed to pay the principal and interest on bonded indebtedness incurred or to be incurred for capital construction or improvements, provided the bonds are offered as general obligations of the issuing governmental

unit and provided further that * * * the question of the issuance of the specific bonds has been approved by the electors of the issuing governmental unit." Or Const, Art XI, § 11b(3).

## ISSUES

Petitioners phrase the issues in this way:

"1. Does the term 'capital construction or improvements' as used in Article XI, § 11b(3)(b), of the Oregon Constitution, encompass:

"a. repairs to buildings and other structures or improvements; or

"b. computers and other items of equipment or furnishings which are not permanently affixed to buildings?

"2. If the answer to 1a or 1b above is no, are the taxes which will be imposed to pay the principal and interest on the bonded indebtedness, as authorized by the electors of Beaverton School District 48 in an election held on March 12, 1996, subject to the limits of Article XI, § 11b?"

Petitioners contend that (1) repairs are not capital construction or improvements, (2) personal property cannot be capital improvements, and (3) if any part of the funds obtained from general obligation bonds is used for items that do not qualify as capital construction or improvements, then *all* of the taxes imposed to pay the bonded indebtedness principal and interest are subject to the limits of section 11b. For the reasons stated below, the court concludes that the terms capital construction or improvements, as used in section 11b, encompass major repairs to buildings and other improvements and the acquisition of personal property.

## ANALYSIS

The issues raised by petitioners require the court to construe the Oregon Constitution. Specifically, the court must construe section 11b, a provision enacted by the people as an initiative measure. Before marching towards that high objective, appropriate orientation requires verification of essential landmarks and compass bearings. That orientation may be summarized as follows: The true line of direction or

objective is the intent of the voters who enacted the law. *See Comeaux v. Water Wonderland Improvement Dist.*, 315 Or 562, 568-69, 847 P2d 841 (1993). The best evidence of the voters' intent is the text of the law. *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381, 648 P2d 1284 (1982). If the text of the law is not clear, then the court may also consider the context of the law. *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993). That context includes "related ballot measures submitted to the voters at the same election." *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994).

In performing this orientation it is usually necessary to also consider the horizon of legislative history.

"It is an unusual case in which the text and context of a constitutional provision reflect the intent of the voters so clearly that no alternative reading of the provision is possible. Ordinarily this court will examine the history of a constitutional provision if there is a plausible alternative reading presented to the court." *Coultas v. City of Sutherlin*, 318 Or 584, 590, 871 P2d 465 (1994) (footnote omitted).

Respondent points out the 1991 Legislature recognized that section 11b uses terms "which do not have established legal meanings." ORS 310.140.[1] The legislature enacted definitional provisions to fill those legal gaps. *See* ORS 310.140. In doing so, the legislature defined "capital construction" (ORS 310.140(17)) and "capital improvements" (ORS 310.140(19)). However, this attractive landmark is only a mirage. Except in the one aspect discussed below, when approached the legislative definitions shimmer into nothingness and leave one still searching for the intent of the electorate.

The legislature was correct in finding that the phrase "capital construction and improvements" does not have an established legal meaning. If it had a definite legal and historical meaning, then the court might conclude that the voters were aware of and intended such meaning. *See Ester v. City of Monmouth*, 322 Or 1, 903 P2d 344 (1995). However, the court cannot find any indication that such is the case.

---

[1] All references to the Oregon Revised Statutes are to 1995.

■ Petitioners argue that ORS 280.060(3)(b) defined the term capital construction prior to the adoption of section 11b, and, therefore, the statutory definition may be viewed as that intended by section 11b. ORS 280.060 permits voters to approve a levy of taxes outside the six percent limitation of Article XI, section 11, of the Oregon Constitution, "for operating purposes or any other purpose." The statute then provides that levies for purposes of capital construction must be separately submitted to the voters. Although a statutory definition existed, it does not mean the term had a definite legal and historical meaning. The definition was merely for procedural purposes in a limited context. It cannot be said that the term had a well-defined legal and historical meaning. Accordingly, it is necessary for the court to consider the "plain, natural, and ordinary" meaning of the words. *Coultas*, 318 Or at 589.

■ The words "construction" and "improvements" are commonly used words. The word construction usually refers to the process of making something: to build, frame, manufacture, organize, or put together something. It may also refer to the result of something that has been made or formed. In the context of section 11b, construction means that a bonded indebtedness was incurred to pay for either materials, land, and labor or the completed creation.

■ The word "improve" means to enhance in value or quality, to make better, and to advance or make progress. The word improvements suggests a completed enhancement or betterment. Common synonyms that refer to tangible improvements with regard to property or assets are rehabilitation, reconditioning, renovation, repair, overhaul, remodel, rearrangement, betterment, or reconstruction. In the context of section 11b, the term improvements is used to refer to those processes or properties financed by the bonded indebtedness which increase the value or usability of property.

The problem word in this case is the word "capital." The word capital has a wide scope of potential meanings, some of which can be readily discarded as irrelevant to the context of section 11b. For example, a capital is a seat of government, an architectural term for the uppermost part of a

column, the form of a letter of the alphabet, and a form of punishment or level of criminal offense. More relevant meanings are: stock or value, accumulated goods, assets that add to the long-term net worth of a corporation, chief in importance or influence, accumulated goods devoted to the production of other goods, accumulated possessions calculated to bring in income, or net worth. Several synonyms are: principal, assets, investments, funds, finances, savings, reserve, means, working capital, supply, resources, and wealth.[2]

■　　In the context of section 11b, the word capital refers to assets, processes, or accumulations of property which are important or significant and which add to the value of existing property. It suggests something permanent rather than temporary, long lasting rather than consumable or wasting. Inasmuch as the limitation is applied to a governmental taxing unit, it may be viewed as distinguishing long term from short term, fixed from operational. Recognizing that operating assets are acquired and disposed of or expended on a periodic basis, capital suggests periods longer than a single fiscal year. Accumulation of capital usually takes time. Assets that add value long term usually have a useful life beyond a single budgetary period. Capital consists of assets that are left over after operating expenses.

■　　When the word capital is combined with the words construction or improvements, the phrase suggests construction or improvements that add value beyond a single operating period or which add to the accumulating assets of the governmental unit. In this case, capital construction would be new buildings, structures, playgrounds or sports fields. Capital improvements would also include additions of new classrooms, remodeling, and major repairs such as new roofs and replacement plumbing.

---

[2] In considering the meaning of the words capital construction and improvements, the court has referred to *Merriam Webster's Collegiate Dictionary* (10th ed 1995), *Webster's Third New International Dictionary* (1961), *The American Heritage Dictionary of the English Language* (3d ed 1992), *Webster's Collegiate Thesaurus* (1976), *Roget's II: The New Thesaurus* (Expanded ed 1988), 3 *The World Book Encyclopedia* (1991), *Encyclopedia Americana* (Deluxe Library ed 1994), and 5 *Collier's Encyclopedia* (1992). These commonly available reference works are consistent with other such references and, in the court's view, collectively reflect the general and ordinary usage of such terms.

■    The court concludes that computers and similar technology, equipment, and furnishings are "improvements" within the meaning of section 11b. Capital improvements need not be real property. It is unlikely that when the people enacted section 11b they intended to allow voters to approve the construction of a new school but not provide the furnishings and equipment necessary to use it. Capital and capital expenditures in the business world includes equipment and expenditures for equipment. Accordingly, school buses, desks, and filing cabinets may all be capital. When such assets are added, updated, or improved, they constitute capital improvements that are part of the accumulated assets of the organization. Such improvements or assets would be expected to have a useful life exceeding a single operating period. That ordinary and usual meaning of capital construction or improvements is consistent with widely known accounting and tax concepts, which have permeated much of the collective public mind. In contrast, operational supplies would be typically acquired and distributed within a single fiscal period.

That interpretation of capital construction and improvements is also consistent with the context of section 11b. Section 11b anticipates annual levies of property taxes and makes an exception to its limits for certain bonded indebtedness approved by voters. Nothing in the language of section 11b suggests any particular limitations on the type of capital that may be acquired by bonded indebtedness and that are typically outside or exceed the capacity of an operating budget.

In enacting the definitional provisions found in ORS 310.140, the legislature may have flashed a mirror in the eyes of the voters who approved the bonded indebtedness in question. Some of these voters may have been aware of and relied upon the definitions in ORS 310.140 in determining whether the capital construction and improvements proposed by respondent were exempt from the limitations of section 11b. The problem, of course, is that the legislature's definitions cannot control the scope of section 11b and, if wrong, could mislead the voters. Fortunately, in this case, the court's construction of the constitution is consistent with the legislative definitions.

Having determined that the indicated repairs, improvements, computers, equipment and technology are encompassed within the phrase capital construction and improvements, it is unnecessary to address the last issue. Now, therefore,

IT IS ORDERED that petitioners' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that respondent's Motion for Summary Judgment is granted.