Lorraine M. ESTER
*v.*
CITY OF MONMOUTH
(TC 3528)

James M. Brown, Enfield, Guimond, Brown & Collins, Salem, represented petitioner.

Glenn Klein, Harrang, Long, Gary & Rudnick, Eugene, represented respondent.

Decision for respondent rendered June 9, 1994.

### CARL N. BYERS, Judge.

This matter is before the court on cross motions for summary judgment. Petitioner seeks a determination that a special assessment for street improvements is a tax subject to the limitations of Article XI, section 11b, of the Oregon Constitution.

## FACTS

Petitioner owns two adjacent lots fronting on Knox Street in the City of Monmouth. The lots are improved with two buildings containing a total of 10 residential units. Knox Street used to be old Highway 99W. Although the right-of-way is 36-feet wide, the concrete street is only 16-feet wide with a narrow asphalt shoulder. There are no curbs. Petitioner's tenants use the additional right-of-way for head-in parking. There is a narrow sidewalk along the front of petitioner's property.

In 1992, respondent determined its streets needed rehabilitation. It developed a rehabilitation plan to be financed by bonds. The specific proposal for Knox Street was to widen the hard-surface area to 36 feet, construct curbs and sidewalks on both sides of the street and install an underground storm drainage system. The cost of this work was $187,876.75. By resolution, the governing body allocated $106,650.05, or 56.77 percent of the cost to the city, and $81,226.70, or 43.23 percent of the cost to be specially assessed against the abutting properties. The record shows that the city council based the allocation on the report of the city engineer, which the council examined and found to be "satisfactory." The council also found "the estimated cost and apportionment * * * to be fair and reasonable."

## JURISDICTION

Petitioner contends that the portion specially assessed does not qualify as a "local improvement" within the meaning of section 11b and, therefore, should be declared void. Before addressing this contention, however, the court must address the issue of jurisdiction. Respondent claims the

court is without jurisdiction to hear this matter because petitioner has not complied with ORS 305.583(1). That statute provides:

> "Ten or more interested taxpayers may petition the Oregon Tax Court to determine the effect of the limits of section 11b, Article XI of the Oregon Constitution on any tax, fee, charge or assessment imposed by a unit of government."

This court has previously held that the "ten" requirement of ORS 305.583 is unconstitutional under both state and federal constitutions. *Welch v. Unified Sewerage Agency*, 12 OTR 359 (1992). Respondent contends that *Welch* is in error and should be overruled.

As indicated by this court in *Welch*:

> "The property tax limits imposed by section 11b establish a constitutional boundary. When government hands reach across that boundary for more taxes, the exaction is an unlawful taking of property." 12 OTR at 362.

Respondent is correct that Article I, section 10,[1] of the Oregon Constitution is not a Due Process Clause. While it may be reasonable to conclude that an unlawful deprivation of property is an injury to property, Supreme Court decisions are to the contrary. *Cole v. Dept. of Rev.*, 294 Or 188, 655 P2d 171 (1982). Even though the rights created in section 11b were established by initiative, those rights protect owners of property from government action, not private wrongs. Therefore, upon reconsideration, the court concludes that Article I, section 10, of the Oregon Constitution, does not guarantee the owner of property a remedy for violations of Article XI, section 11b, of the Oregon Constitution.

However, due process under the federal constitution, does guarantee a taxpayer a remedy. As noted by the United States Supreme Court in *McKesson Corp. v. Division of Alc. Bev.*, 496 US 18, 110 S Ct 2238, 110 L Ed 2d 17 (1990):

---

[1] Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

" '[T]he root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing * * *'." 496 US at 37.

Respondent contends that an analysis under *Mathews v. Eldridge*, 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976), would not justify the decision made in *Welch*. The court does not agree. Section 11b imposes significant limits on financing local government. Self-interest creates a risk of error in the government's classifying its fees, charges and assessments for purposes of section 11b. In light of that risk, it is important that an individual have a clear procedural process by which to challenge an illegal deprivation. There is no compelling state interest which justifies denying an individual a hearing. Allowing a single taxpayer to file a petition will not significantly increase the burdens of government. While the state may choose to provide either a predeprivation hearing, or clear and certain postdeprivation relief, it may not condition the remedy on group action. The rights guaranteed by the constitution are individual rights.

## ARTICLE XI, SECTION 11b

On the merits, petitioner contends that the special assessment involved is a tax within the meaning of Article XI, section 11b, of the Oregon Constitution.

"A 'tax' is a charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements." Or Const, Art XI, § 11b, cl (2)(b).

The issue is whether the assessment is for a "local improvement" as defined by the Oregon Constitution.

"A 'local improvement' is a capital construction project undertaken by a governmental unit

"(i) which provides a special benefit only to specific properties or rectifies a problem caused by specific properties, and

"(ii) the costs of which are assessed against those properties in a single assessment upon the completion of the project, and

"(iii) for which the payment of the assessment plus appropriate interest may be spread over a period of least ten years.

"The total of all assessments for a local improvement shall not exceed the actual costs incurred by the governmental unit in designing, constructing and financing the project." Or Const, Art XI, § 11b, cl (2)(d).

■     Petitioner makes two arguments. First, petitioner claims the phrase "special benefits only to specific properties" describes something different from traditional special benefits. Traditionally the presence of general benefits has not excluded finding special benefits. Petitioner asserts the new definition in section 11b does.

"The intent of this constitutional amendment is apparent in its text. As material here, a permissible 'local improvement' requires two conditions: (1) 'special benefit' to the assessed properties; *and* (2) *only* to the assessed properties."

The court disagrees. The word "only" does not modify "special benefits" but rather modifies "specific properties." Any other interpretation is too narrow and unworkable. The court cannot envision a local improvement that would not have some general benefit for the community. A sewer line to a specific property would have general benefit to the community by reducing the risk of septic drain field failure or contamination of groundwater. If a project produced only benefits as narrow and specific as petitioner describes, it should not be a government project because it would be strictly for private benefit.

■     Admittedly, the language of the constitutional provision is not artful. The use of the word "only" is unnecessary. If benefits are "special," they are so because they flow to specific properties.[2] As stated by the court in *State Dept. of Trans. v. Montgomery Ward Dev.*, 79 Or App 457, 464, 719 P2d 507 (1986): "Special benefits are those which are peculiar to the tract and which increase its accessibility and enhance the highest and best uses of the property."

To understand petitioner's second contention, we must first consider how courts viewed special assessments

---

[2] What constitutes a special benefit has been the subject of much dispute and discussion in the field of eminent domain. *See State Highway Com. v. Bailey et al.*, 212 Or 261, 319 P2d 906 (1957). As the court in that case noted, however, there is nothing special about the term "special benefit."

prior to section 11b. For over 100 years in Oregon the governing bodies of local governments have made decisions regarding local improvements. Those bodies decide whether private properties are specially benefited and how much those private properties are to be specially assessed. Because these are legislative decisions, the courts have granted only limited review:

> "The city council's determination that the improvements made in the district were for the benefit of the property assessed and in the amount of the assessment is conclusive upon the courts unless it can be said that the city's action is * * * 'palpably arbitrary and a plain abuse.'" *Raz et al v. City of Portland et al*, 226 Or 515, 520, 360 P2d 549 (1961). (Citations omitted.)

Limited judicial review of special assessments is based on the separation of powers in the constitution. *See Stanley v. City of Salem*, 247 Or 60, 427 P2d 406 (1967).

Petitioner contends that section 11b makes the analysis in *Stanley* and the long-standing practices of the courts irrelevant. Petitioner believes the court must determine whether a property is specially benefited without deference to the decision of the local governing body.

Although the people of Oregon may have intended to impose drastic limits on property taxes, there is no indication they intended to disturb the methods and procedures for establishing special assessments. Petitioner's position runs counter to fundamental policies of our government.

■ Special assessments are to be distinguished from general taxes. When general taxes are imposed, the rate or amount of tax is not tied or related to the benefits received by the taxpayer. *Tharalson v. State Dept. of Rev.*, 281 Or 9, 21, 573 P2d 298 (1978). However, special assessments require a relationship between the amount of the assessment and the benefits received by a particular property.

> "The imposition of a special assessment upon property which is not specially benefited by the improvement unjustly deprives the owner of a property interest." *Boyle v. City of Bend*, 234 Or 91, 99, 380 P2d 625 (1963).[3]

---

[3] As the court noted in *Boyle*, although the question of whether a property is specially benefited is a question for the courts, the courts have given it only a limited scope of review. 234 Or at 101-02.

The purpose of determining whether there is special benefit to a property under section 11b is also to distinguish general taxes from special assessments. Whether determined by a legislature or a court, the issue is the same: Are there benefits conferred in *quid pro quo* of the tax exacted? While the nature of the determination is one of economic benefits and detriments, it is not one subject to precise calculations. This is because the issue involves, to a large extent, judgments of fairness in the classification of taxpayers. Historically, such determinations are matters for a legislative body.

> "There is no universal rule of justice upon which such assessments can be made. Sometimes almost the whole benefit accrues to a few. Sometimes the benefit is distributed with something like regularity through the community. An apportionment of the cost that would be just in one case would be unfair and oppressive in another. For this very reason the power to determine when a special assessment shall be made, and on what basis it should be apportioned, is wisely confided to the legislature, and could not, without the introduction of some new principle in representative government, be placed elsewhere." 2 *Cooley on Taxation*, 1180 (3rd ed 1903).

■ A "local improvement" as defined in section 11b is a product of local legislative action. If this court made an independent determination of special benefits without deference to legislative findings, it would invite or require a judicial determination for every property specially assessed. This potential burden and other policy problems led the courts to limit the scope of their review. *See Western Amusement v. Springfield*, 274 Or 37, 545 P2d 592 (1976). The court finds no language in section 11b to indicate that the people of Oregon intended to change this established practice.

Although the affidavits submitted in support of each parties' motion for summary judgment contradict each other, the court does not believe a trial is required. Applying the limited scope of review standard as set forth above, the court finds petitioner's pleadings and affidavit do not show the special assessment is "palpably arbitrary and a plain abuse." The court finds the special assessment in question is for a local improvement within the meaning of section 11b and

therefore is not subject to the limitations of that section of the Oregon Constitution. Now, therefore,

IT IS ORDERED that respondent's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that petitioner's Motion for Summary Judgment is denied. Costs to neither party.