Argued and submitted May 2, judgment of Tax Court vacated, and case remanded to Tax Court with instructions to dismiss September 28, 1995

## Lorraine M. ESTER,
*Appellant,*

*v.*

## CITY OF MONMOUTH,
*Respondent.*

## (OTC 3528; SC S41529)

903 P2d 344

James M. Brown, of Enfield, Guimond, Brown & Collins, Salem, argued the cause and filed the briefs for appellant. With him on the reply brief was Scott McArthur, Monmouth.

William F. Gary, of Harrang Long Gary Rudnick P.C., Eugene, argued the cause for respondent. With him on the brief was Glenn Klein.

Peter A. Kasting, Portland City Attorney's Office, Portland, filed a brief on behalf of *amicus curiae* League of Oregon Cities.

CARSON, C. J.

## CARSON, C. J.

Petitioner brought this claim against respondent, the City of Monmouth (the city), arguing that the city exceeded the property tax limitations prescribed by Article XI, section 11b, of the Oregon Constitution,[1] when it imposed a special assessment upon petitioner for street and sidewalk improvements to the street running in front of property owned by petitioner. This case comes before us upon review of the Tax Court's order granting the city's motion for summary judgment.

Petitioner owns two adjacent lots in the city that contain a total of 10 residential units. In 1992, the city voters approved a $1.8 million bond to repair certain streets, including the street in front of petitioner's property. The funds from the bond were dedicated to widening the streets from 16 feet to 28 feet and to covering the concrete streets with asphalt.

In 1993, the city council created a local improvement district to further improve the street in front of petitioner's property by increasing its width an additional eight feet (to 36 feet) and by constructing a storm drainage system, curbs, and sidewalks. The city council decided to assess the property owners in the local improvement district for those additional costs. Specifically, the city council adopted a resolution that allocated 56.77 percent of the cost of improving the street to the city and 42.23 percent of the cost to the property owners in the local improvement district.

Petitioner filed an action in the Tax Court, pursuant to ORS 305.583, arguing that the special assessment against the property owners in the local improvement district was not an assessment for a "local improvement" within the meaning of the exception to the property tax limitations contained in Article XI, section 11b, of the Oregon Constitution, and that, as a consequence, the assessment exceeded the limitations imposed by that section. Petitioner further

---

[1] Article XI, section 11b, imposes limitations upon the assessment of "property taxes." That section defines a tax on property to be "any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property except incurred charges and assessments for local improvements." Or Const, Art XI, § 11b(2)(b). This section was created by an initiative petition adopted by the people on November 6, 1990, known as Ballot Measure 5.

argued that the proposed local improvement did not "in fact" improve her property because she lost valuable parking space in front of her property.

In the Tax Court, both parties moved for summary judgment. That court concluded that "the special assessment in question is for a local improvement within the meaning of section 11b and therefore is not subject to the limitations of that section of the Oregon Constitution." *Ester v. City of Monmouth*, 13 OTR 104, 110 (1994). Accordingly, the Tax Court granted the city's motion for summary judgment and denied petitioner's motion for summary judgment. *Id.* at 111.

Petitioner then appealed that decision to this court. The city cross-assigned as error its earlier argument that the Tax Court did not have jurisdiction to hear petitioner's case.

We first must determine whether the Tax Court had jurisdiction to consider petitioner's claim under ORS 305.583(1). That statute provides:

"Ten or more interested taxpayers may petition the Oregon Tax Court to determine the effect of the limits of section 11b, Article XI of the Oregon Constitution on any tax, fee, charge or assessment imposed by a unit of government. For purposes of this section, 'interested taxpayers' means persons who are subject to the tax, fee, charge or assessment in question."

ORS 305.580(1) makes that procedure the exclusive remedy for an interested taxpayer bringing a challenge under the limitations imposed by Article XI, section 11b:

"The provisions of ORS 305.583 * * * shall provide the exclusive remedy for determination of questions concerning the effect of the limits of section 11b, Article XI of the Oregon Constitution on taxes, fees, charges and assessments of units of government."

The city argues that, because petitioner did not bring her claim with at least nine other taxpayers, the Tax Court did not have jurisdiction to consider petitioner's claim under ORS 305.583(1). The Tax Court rejected that argument, however, concluding that the 10-taxpayer requirement

of ORS 305.583(1) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] The Tax Court explained:

"Section 11b imposes significant limits on financing local government. Self-interest creates a risk of error in the government's classifying its fees, charges and assessments for purposes of section 11b. In light of that risk, it is important that an individual have a clear procedural process by which to challenge an illegal deprivation. There is no compelling state interest which justifies denying an individual a hearing. Allowing a single taxpayer to file a petition will not significantly increase the burdens of government. While the state may choose to provide either a predeprivation hearing, or clear and certain postdeprivation relief, it may not condition the remedy on group action." *Ester*, 13 OTR at 107.

The Tax Court effectively severed the 10-taxpayer requirement from ORS 305.583(1) and concluded that it had jurisdiction to consider petitioner's claim under that statute.[3]

We agree with the city that, on its face, ORS 305.583(1) requires that a taxpayer bring his or her challenge in conjunction with at least nine other taxpayers. Petitioner did not do so in this case. The questions before us, then, are whether the 10-taxpayer requirement violates the Due Process Clause and whether this court must sever that requirement from the statute.

The Supreme Court of the United States has held that "the root requirement of the Due Process Clause * * * [is] that an individual be given an opportunity for a hearing *before* [the individual] is deprived of any significant property interest." *McKesson v. Division of Alcoholic Beverages and Tobacco*, 496 US 18, 37, 110 S Ct 2238, 110 L Ed 2d 17 (1990). (Internal quotation marks omitted.) The city argues

---

[2] The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." US Const, Amend XIV, § 1.

[3] The Tax Court based its decision on *Welch v. Unified Sewerage Agency*, 12 OTR 359 (1992). In *Welch*, the Tax Court held that the 10-taxpayer requirement of ORS 305.583(1) violated both Article I, section 10, of the Oregon Constitution, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 366. However, in this case, the Tax Court reconsidered *Welch* and reversed its decision that the 10-taxpayer requirement is unconstitutional under the Oregon Constitution. *Ester*, 13 OTR at 106. Consequently, we consider only the federal constitutional issue here.

that, even if the Due Process Clause does require that petitioner be allowed a hearing to challenge this assessment, a different statute did provide petitioner with an opportunity for a hearing in this case and, because petitioner did not avail herself of the hearing that statute affords, the 10-taxpayer requirement of ORS 305.583(1) does not violate this petitioner's due process rights. The city maintains that ORS 223.401[4] provided petitioner a process, through a writ of review, for challenging the city's assessment for the local improvement in this case.

To overcome the exclusivity provision of ORS 305.580(1), the city contends that Article XI, section 11b, does not alter the statutory meaning of the words "local improvement" or "special assessment" and that the constitutional subsection merely reflects the traditional definition of "local improvements" and recognizes that proper assessments for local improvements are not property taxes subject to the limits of that section. The city maintains that the inquiry into whether the assessment was for a "local improvement" is not an inquiry into the "effect and limits of section 11b, Article XI of the Oregon Constitution on taxes, fees, charges and assessments of units of government" but, rather, is merely an ordinary challenge to a local improvement. Therefore, the city concludes that the exclusivity provision of ORS 305.580(1) does not apply, and petitioner has a

---

[4] ORS 223.401 provides, in part: "[O]wners of any property against which an assessment for local improvements has been imposed may seek a review thereof under the provisions of ORS 34.010 to 34.100."

ORS 34.010 to 34.100 provide the procedure for issuing a writ of review. Specifically, ORS 34.040 (1993) provided:

"The writ shall be allowed in all cases where the inferior court including a district court, officer, or tribunal other than an agency * * * in the exercise of judicial or quasi-judicial functions appears to have:

"(1) Exceeded its jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it;

"(3) Made a finding or order not supported by substantial evidence in the whole record;

"(4) Improperly construed the applicable law; or

"(5) Rendered a decision that is unconstitutional,

"to the injury of some substantial interest of the plaintiff, and not otherwise. The fact that the right of appeal exists is no bar to the issuance of the writ."

The 1995 legislature amended ORS 34.040, effective September 9, 1995. Or Laws 1995, ch 79, § 12. The amendment does not change our analysis in this case.

right to seek a writ of review under ORS 223.401 and ORS 34.010 to 34.100.

■       This court's determination of whether the Tax Court had jurisdiction in this case is intertwined with petitioner's arguments about the merits of her challenge. Petitioner argues, in effect, that Article XI, section 11b, changes the statutory definition of "local improvement" contained in ORS chapter 223 and illuminated by this court's case law. Therefore, a local improvement that also confers a general benefit should be treated like a property tax, subject to challenge in the Tax Court under Article XI, section 11b. However, if Article XI, section 11b, does *not* alter the statutory definition of "local improvement," that constitutional provision simply exempts from coverage all assessments under ORS chapter 223. If that is the case, petitioner's challenge is not about the limits and effects of Article XI, section 11b, at all, but instead is merely a challenge to a local improvement assessment under the statute. Under that scenario, ORS 223.401 provides a mechanism for review of a local improvement assessment, and the requirements of due process are met. In other words, the jurisdictional issue depends upon whether a "local improvement" or a "tax on property" is being challenged. For the reasons that follow, we conclude that petitioner had an adequate avenue for review and that the 10-taxpayer requirement does not contravene the commands of due process in this context.

        Article XI, section 11b, places limits upon "taxes imposed upon any property." A "tax" is defined to be "any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of ownership of that property *except incurred charges and assessments for local improvements*." Or Const, Art XI, § 11b(2)(b). (Emphasis added.) That section further defines a "local improvement" to be:

> "[A] capital construction project undertaken by a governmental unit
>
> "(i)    *which provides a special benefit only to specific properties or rectifies a problem caused by specific properties*, and
>
> "(ii)    the costs of which are assessed against those properties in a single assessment upon the completion of the project, and

"(iii)   for which the payment of the assessment plus appropriate interest may be spread over a period of at least ten years.

"The total of all assessments for a local improvement shall not exceed the actual costs incurred by the governmental unit in designing, constructing and financing the project." Or Const, Art XI, § 11b(2)(d). (Emphasis added.)

Petitioner argues that the assessment for the street improvement in front of her property was not a "local improvement" for the purposes of Article XI, section 11b, and, thus, that it was a tax subject to the limitations imposed by that section. She asserts that the city's assessment did not provide "a special benefit only to specific properties" in the local improvement district. She contends that, because the street improvement project also provided a general benefit to the community, it could not have been a local improvement for the purposes of Article XI, section 11b, because it did not benefit *only* the properties within the local improvement district.

■      Thus, we must determine whether the voters, in enacting Article XI, section 11b, intended to exclude from coverage any local improvement that also might provide a general benefit to the community. *See Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993) (explaining method of analysis for interpreting constitutional provisions initiated by the voters). In ascertaining the intent of the voters, this court first looks to the text and context of the provision. *See id.* ("The best evidence of the voters' intent is the text of the provision itself.").

In this case, the parties provide competing interpretations of the text of the provision. Petitioner argues that the requirement that local improvements provide "a special benefit only to specific properties" means that the local improvement must provide *only* a special benefit and no general benefit to the community. On the other hand, the city argues that the word "only" modifies "specific properties," not "special benefit." In other words, the city argues that the fact that a general benefit exists does not negate the possibility that the improvement provides a special benefit only to specific properties.

As this court has said before, "[i]n examining the text and context to determine the meaning of a constitutional provision adopted by the people by initiative or referendum, this court typically gives words of common usage their plain, natural, and ordinary meaning." *Coultas v. City of Sutherlin,* 318 Or 584, 588-89, 871 P2d 465 (1994). If, however, words used in a provision enacted by initiative or referendum have a well-defined legal meaning, we will give the words that meaning in construing the provision. *Cf. Gaston v. Parsons,* 318 Or 247, 253, 864 P2d 1319 (1994) ("[W]ords in a statute that have a well-defined legal meaning are to be given that meaning in construing the statute."); *King v. City of Portland,* 2 Or 146, 154-55 (1865) ("If, when our Constitution was made, certain words or sentences had obtained a certain signification or force, either by common usage or legal decision, it must be presumed, if found in that instrument that they bear the established meaning, unless plainly from the context or other provision, a different meaning is certainly intended.").

This is a case in which the voter-initiated provision used terms that have both legal and historical meanings. The term "special benefit," as well as the term "local improvement," are terms of art that have specific, legal meanings. In the fall of 1990, at the time the voters enacted Article XI, section 11b, statutory procedures were in place that allowed local governments to make assessments for local improvements. ORS 223.389 (1989) provided, in part, that "[t]he council may prescribe by ordinance or resolution the procedure to be followed in making local assessments for benefits from a local improvement upon the lots which have been benefited by all or part of the improvement." That same statute further provided that "[the council] shall determine the amount of assessment to be charged against each lot within the district, *according to the special and peculiar benefits accruing thereto from the improvement,* and shall by ordinance spread the assessments." (Emphasis added.)

Thus, at the time of the election, it was established law that an assessment for a local improvement was based upon the "special and peculiar benefit" to the subject property. In other words, when the drafters of the measure chose to define the exemptions for "local improvements" in terms of the "special benefits" to the subject property, they used the

same language that the statute setting forth the scheme for establishing local improvement districts had used for more than 40 years. Specifically, that statute never had been read to invalidate a local improvement because it also confers some general benefit upon the community.[5]

■ The coexistence of local and general benefits arising from the same project also was well-established in the case law of this court at the time the voters enacted Article XI, section 11b. In *Stanley v. City of Salem*, 247 Or 60, 64, 427 P2d 406 (1967), this court summarized: "This court has decided many special-assessment cases. The law has by now become fairly settled. Special assessments can be levied upon property to the extent that property is specially benefited by the improvement for which the levy is assessed." The idea that local improvements are tied to the "special benefits" accruing to the property owners is a well-settled one. *Stanley* further makes it clear that the concept of special benefits does not require that the improvements at issue provide no general benefits to the community:

> "* * * When a local improvement produces a special benefit, other than the benefit received by the general public, to certain land in the vicinity of the improvement, the mere fact that it also results in benefit to the general public, or even the fact that its immediate occasion or purpose was the creation of the general improvement project of which it is a part, does not deprive it of its character as a local improvement nor prevent the imposition of at least a portion of its cost as a

---

[5] The 1991 legislature amended ORS 223.389 to bring the statute in conformance with Article XI, section 11b. *See* Or Laws 1991, ch 902, § 37. In the same session, the legislature also enacted ORS 310.140, setting forth its interpretation of the terms used in Article XI, section 11b. In doing so, the legislature stated that Measure 5 "use[d] terms which do not have established legal meanings and require definition by the Legislative Assembly." *See* Or Laws 1991, ch 459, § 210. However, the legislature used essentially the same language to define both "local improvement" and "special benefit" that had already existed in both statutes and case law prior to the passage of Measure 5. For example, according to ORS 310.140(2), " 'special benefit only to specific properties' shall have the same meaning as 'special and peculiar benefit' as that term is used in ORS 223.389." In other words, in defining "local improvement" and "special benefit" for the purpose of Article XI, section 11b, the legislature used their established, legal meanings.

Although it is clear that a 1991 legislative enactment is not evidence of the voters' intent in 1990, the nature of the 1991 changes indicates that, in the legislature's view, Measure 5 did not substantively change the longstanding definition of local improvement, nor the process by which a local improvement is assessed.

special assessment against such land. * * *" *Id.* at 65 (quoting 2 Antieau, Municipal Corporation Law 291-92, § 14.01 (1965)). (Internal quotation marks omitted.)

From the foregoing discussion, it is clear that this court considered whether an improvement provided special benefits to the subject property in determining whether to assess a landowner for the value of the local improvement. It is equally clear, however, that a determination that an improvement conferred a "special benefit" was in no way dependent upon whether the improvement also conferred a general benefit. *See also State Highway Com. v. Bailey et al,* 212 Or 261, 300, 319 P2d 906 (1957) (quoting *Hempstead v. Salt Lake City,* 32 Utah 261, 90 P 397 (1907)) ("In case the improvement made a large share or all of the property abutting thereon more accessible and convenient for use, then such benefits would not for that reason cease to be special simply because they were enjoyed by several or a large number of property owners in common."); *Fisher et al. v. City of Astoria,* 126 Or 268, 277, 269 P 853 (1928) ("[A local improvement] may incidentally benefit the entire city; that wholesome effect will not destroy its use as the foundation for a local assessment * * *.").

The drafters of Article XI, section 11b, chose words that had definite legal and historical meanings. The provision creates an exemption for "local improvements" and defines that exemption by reference to a "special benefit." It is clear that, at the time that the voters enacted Article XI, section 11b, local improvements included projects that also carried with them general benefits to the community. We conclude that the continued use of those terms carries forward the same meaning as before the passage of Measure 5.

Petitioner argues that, notwithstanding the drafters' choice of words, the insertion of the word "only" in Article XI, section 11b(2)(d), alters entirely the meaning of "special benefit." She contends that the insertion of that word means that, if an improvement provides a general benefit as well as a special benefit, then the project is no longer a "local improvement." We find that argument unpersuasive.

The insertion of the word "only" does not change the fact that the drafters chose terms that never have been read

to require that a local improvement confer exclusively local benefits. Moreover, the drafters of the text inserted the word "only" before "specific properties" rather than before "special benefits." Thus, petitioner's argument that the voters meant that assessments providing *only* special benefits were exempt from the constraints of Article XI, section 11b, is not a natural reading of the text. It appears that the drafters used the words "only to specific properties" to reiterate the meaning of a special benefit — "benefits [that in fact] add anything to the convenience, accessibility, and use of the property as contra-distinguished from benefits arising incidentally out of the improvement and enjoyed by the public generally." *State Highway Com. v. Bailey*, 212 Or at 300. (Internal quotation marks omitted.)

Although we find the city's, and the Tax Court's, reading of the constitutional provision to be more true to the text than petitioner's reading, we agree that the text is not absolutely clear. In addition, there is nothing in the context of the provision that illuminates our reading of Article XI, section 11b.[6]

■    Because the voters' intent is not entirely clear from the text and context of Article XI, section 11b, we now turn to

---

[6] Petitioner argues in her reply brief:

"Under the plain language of the Constitution, as now amended, the law changed. The text and context of the provision are sufficient. The legislative intention is patent. * * * Given the clear thrust and intention of Measure 5 to limit taxes imposed on property, it is an exercise in bureaucratic denial or delusion for the City to contend that the voters intended no change in the law of special assessments."

We are not persuaded by that argument. We agree that the context of the statute at issue makes clear that the voters intended to limit property taxes severely. It does not follow, however, that the voters intended to eliminate all methods of raising revenue, particularly those that are explicitly exempted from coverage under Article XI, section 11b. As this court stated in *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 381, 851 P2d 595 (1993):

"By its terms, Article XI, section 11b, is a limitation on only those certain forms of revenue generation that fall within its definitions. It is not a limitation on other forms of revenue generation that do not fall within its definitions. It is clear that the constitutional provision defines those charges that it limits and, by its terms, excludes from its limits other forms of revenue generation, including income taxes, sales taxes, and any other charges not imposed upon property or upon property owners as a direct consequence of property ownership."

In other words, the contextual provisions that severely limit a local government's ability to impose property taxes do not affect how we consider methods of raising revenue that fall *outside* those limits.

the history of that provision. *See Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994) (describing method of analysis). The history of an initiated provision includes information provided to the voters in the Voters' Pamphlet. *Id.* at 560 n 8.

In this case, the committee appointed to provide impartial explanations of the ballot measures for the Voters' Pamphlet summarized the relevant part of the measure: "The limits in this measure DO NOT APPLY to * * * assessments for capital construction that provides [*sic*] a special benefit to the property and that can be paid off over at least ten years[.]" 1990 General Election Voters' Pamphlet 33.

That explanation did not suggest to voters that an assessment for a local improvement that also provides general benefits would be included under the property tax limitations of Article XI, section 11b. In fact, the committee entirely dropped the word "only" from the Voters' Pamphlet and explained that an assessment for any capital project providing a special benefit is exempt from coverage. That explanation echoes the Tax Court's reading of the provision — that local improvements that confer special benefits on particular property are exempt from the limitations contained in the measure, regardless of whether the improvements also provide general benefits. Nothing else in the Voters' Pamphlet, or any other history of the enactment, illuminates our reading of the exemption.

Taking into consideration the text, context, and history of Article XI, section 11b, it is clear that the voters intended to exclude all proper assessments for local improvements from the property tax restrictions contained in that provision. As a result, petitioner's argument that this is a challenge to the limits and effects of Article XI, section 11b, is misplaced. Petitioner's challenge boils down to nothing more than an ordinary challenge to a local improvement.[7] Petitioner could have brought that challenge before the circuit court upon a writ of review pursuant to ORS 223.401.

---

[7] Because petitioner's challenge to the meaning of "local improvement" in Article XI, section 11b, is a case of first impression, we do not mean to suggest that petitioner improperly brought this challenge under the subjects covered in ORS 305.583. We merely conclude that, because we now hold that the term "local improvement" refers to a local improvement authorized under ORS chapter 223, petitioner had an adequate opportunity to challenge the assessment under ORS 223.401 and ORS 34.010 to 34.040; thus, the 10-taxpayer requirement does not contravene the commands of due process.

In sum, petitioner had an adequate means of review for her challenge, and the 10-taxpayer requirement does not violate due process in this context.[8] Accordingly, the Tax Court erred in severing the 10-taxpayer requirement from ORS 305.583(1) in this case, and that court did not have jurisdiction to hear this challenge under that statute.

The decision of the Tax Court is vacated. This case is remanded to that court with instructions to dismiss for lack of jurisdiction.

---

[8] We do not decide whether the 10-taxpayer requirement violates due process in other contexts in which a taxpayer does not have another avenue for bringing a challenge.