On respondents/petitioners on reconsideration's and intervenor below/petitioner on reconsideration's petition for reconsideration filed February 21,* petition for reconsideration allowed; former opinion modified and, as modified, adhered to; case remanded to Oregon Tax Court April 18, 2002

## SHILO INN PORTLAND/205, LLC,
*Appellant / Respondent on Reconsideration,*

*v.*

## MULTNOMAH COUNTY,
City of Portland,
and Portland Development Commission,
*Respondents / Petitioners on Reconsideration,*

*and*

## DEPARTMENT OF REVENUE,
*Intervenor Below / Petitioner on Reconsideration.*

(OTC 4370; SC S46816)

45 P3d 107

Jeannette N. Launer, Pacific City, and Karen M. Williams, of Lane Powell Spears Lubersky LLP, Portland,

---

* 333 Or 101, 36 P3d 954 (2001); on review from the Tax Court, 15 OTR 36 (1999).

filed the petition for reconsideration for respondent/ petitioner on reconsideration Portland Development Commission. With them on the petition for reconsideration were Sandra N. Duffy, Chief Assistant County Counsel, Portland, for respondent/petitioner on reconsideration Multnomah County; Linda Meng, Chief Deputy City Attorney, Portland, for respondent/petitioner on reconsideration City of Portland; and Douglas M. Adair, Assistant Attorney General, Salem, and Hardy Myers, Attorney General, for intervenor below/ petitioner on reconsideration Department of Revenue.

No appearance by appellant/respondent on reconsideration.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and Balmer, Justices.**

GILLETTE, J.

---

** De Muniz, J., did not participate in the consideration or decision of this case.

**GILLETTE, J.**

In *Shilo Inn v. Multnomah County*, 333 Or 101, 36 P3d 954 (2001), this court held that Oregon constitutional provisions that limit ad valorem property tax rates require the categorization of urban renewal taxes according to their intended use and not according to the nature of the taxing district imposing the tax. In accordance with that ruling, we reversed a decision of the Oregon Tax Court, which had concluded that statutes permitting urban renewal taxes to be characterized in some instances as taxes "raised specifically to fund the public school system" were permissible under the constitutional scheme.

Respondents Multnomah County, the City of Portland, and Portland Development Commission, together with intervenor below, Department of Revenue (respondents), timely petitioned for reconsideration of this court's decision, arguing that the court made four key, but erroneous, factual assumptions that led the court to what respondents style as the court's "legally erroneous conclusion" that the statutes at issue were inconsistent with constitutional requirements. None of respondents' arguments in that regard is well taken, and we reject them without discussion.

Respondents also contend that the court made one additional error that does not affect the outcome of the case, but which is bound to cause confusion and, therefore, should be corrected. Respondents point to a passage in the introductory section of the opinion, in which this court discussed how urban renewal plans implemented after the date that Ballot Measure 50 was adopted will be funded. The court's opinion states:

> "If an urban renewal plan eventually is instituted in a district in which there was no urban renewal area when Measure 50 was adopted, then the assessed value of each property in the district on the date that the permanent rate was set necessarily would be equal to its frozen base. The increment would begin to accrue thereafter, as the urban renewal plan took effect. The urban renewal program, therefore, would be funded by the familiar process of extending the permanent rate against the increment and,

under subsection (15) of Article XI, section 11, the taxes raised thereby would be used 'exclusively to pay any indebtedness incurred for the redevelopment or urban renewal project.'"

333 Or at 112. Respondents argue that the first sentence of the foregoing passage erroneously suggests that, for urban renewal plans implemented after the adoption of Measure 50, the frozen base for properties in the urban renewal area will be equivalent to the assessed value for properties in that area in 1997. In reality, they contend, the 1997 assessed value of the affected properties is not relevant to the calculation of the frozen base for plans implemented after 1997.

The statement about which respondents complain is part of the explanatory section of the opinion that provided background for the later analysis. Nonetheless, respondents are correct that the problematic sentence could cause confusion. The opinion should have stated that, in the case of an urban renewal plan implemented after the voters adopted Measure 50, the constitutional permanent rate of the taxing district in which the urban renewal area is located, by definition, would generate that district's operating taxes. Because the frozen base would be equivalent to the assessed value of affected properties on the date that the urban renewal plan is adopted, diverting taxes on the increment to urban renewal thereafter would not detrimentally affect the operating revenues available to the taxing district in which the urban renewal area is located. The misstatement in the original opinion resulted from an unsuccessful attempt to state the foregoing more briefly.

We allow reconsideration. We adhere to the holding in our former opinion that, under Measure 5, taxes used to fund urban renewal properly fall within the category of taxes dedicated to fund "other government" operations and that nothing in Measure 50 signals the voters' intent to alter the way in which those urban renewal taxes are to be categorized. However, we modify our former opinion in the respect described above.

The petition for reconsideration is allowed. The former opinion is modified and, as modified, is adhered to. The case is remanded to the Oregon Tax Court for further proceedings.