Argued and submitted September 11, 2000, judgment of Tax Court affirmed
June 12, 2003

## Gordon R. MARTIN
### and Gordon S. Martin, Jr.,
*Appellants,*

*v.*

## CITY OF TIGARD,
*Respondent.*

## (OTC 4308; SC S46329)

72 P3d 619

Douglas V. Van Dyk, of Tarlow, Jordan & Schrader, Portland, argued the cause for appellants. With him on the brief was Edward H. Trompke.

James M. Coleman, of Ramis, Crew, Corrigan & Bachrach, LLP, Portland, argued the cause and filed the brief for respondent.

Before Carson, Chief Justice, and Gillette, Durham, and Riggs, Justices.**

CARSON, C. J.

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case. De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## CARSON, C. J.

In this direct appeal from the Tax Court, we must decide whether a charge by the City of Tigard (the city) against taxpayers' property qualifies as an assessment for a local improvement, which is exempt from the property tax limitations set out in Article XI, section 11b, of the Oregon Constitution or, instead, constitutes a "tax" subject to those limitations.[1] The Tax Court determined that the charge qualified as an assessment for a local improvement under Article XI, section 11b, and granted summary judgment in the city's favor. *Martin v. City of Tigard*, 14 OTR 517 (1999).

On review, taxpayers contend that the charge at issue does not qualify as an assessment for a local improvement, as Article XI, section 11b, defines that term, for three reasons: (1) the city requires taxpayers to waive all irregularities or defects in the local improvement proceedings and cost apportionment in order to exercise the option of paying the charge over a ten-year period; (2) the city did not assess other properties that taxpayers contend also received a special benefit from the project; and (3) the city included attorney fees and litigation costs related to the project in its costs. We review for errors of law. ORS 305.445. For the reasons set out below, we conclude that the city's charge against taxpayers falls within the meaning of an assessment for a local improvement under Article XI, section 11b, and, therefore, is not a "tax" subject to the dollar limits of that provision. Accordingly, we affirm the judgment of the Tax Court.

The following facts are taken from the Tax Court's summary judgment order and the parties' affidavits and exhibits in support of their respective motions for summary judgment. In 1984, the city formed the Dartmouth Street Local Improvement District No. 40 (the Dartmouth LID) to pay for the construction of an extension of Dartmouth Street

---

[1] In 1990, Oregon voters adopted Ballot Measure 5, which added Article XI, section 11b, to the Oregon Constitution and set dollar limits upon certain charges that government imposes upon real property. In 1997, the voters approved Ballot Measure 50, which modified Article XI, section 11b, in ways not relevant to this dispute.

(the project). Taxpayers own approximately 25 acres of property located within the Dartmouth LID boundary. The city began construction on the project in 1992. After completing condemnation proceedings necessary to acquire property from another landowner in the LID boundary, the city finished the project in 1994.

In 1993, before completion of the project, but after the city had drawn the Dartmouth LID boundary, the city granted Waremart, Inc., and Costco, two merchant corporations, access to Dartmouth Street. Both Waremart and Costco built sales facilities largely outside the LID boundary, but they constructed parking lots within the LID boundary and placed the entrances to their facilities on Dartmouth Street. Once finished, the sales facilities caused increased traffic on Dartmouth Street.

In 1998, the city enacted Ordinance 98-12, which proposed final assessments against the properties located within the Dartmouth LID for the cost of the project. The city included attorney fees and litigation costs associated with the project in its total costs, including attorney fees and litigation costs stemming from the condemnation proceeding. The city proposed to make a final assessment of $1,947,677 against taxpayers' property. However, because the entire Waremart structure and the majority of the Costco structure were located outside the Dartmouth LID boundary, the city did not assess those parts of the Costco and Waremart parcels. The city also did not assess three residential parcels of land located within the LID boundary—including taxpayers' residence—that had gained access to Dartmouth Street as a result of the project. Finally, as part of the findings that it adopted in Ordinance 98-12, the city stated that it would not accept taxpayers' application to extend payment of the charge for the Dartmouth LID over a ten-year period unless taxpayers agreed to waive all irregularities or defects in the local improvement proceedings and cost apportionment, as required by ORS 223.215(1)(a) and *former* Tigard Municipal Code (TMC) 13.04.070(b)(3)(A) (1996), *renumbered as* TMC 13.04.070(2)(c)(1) (2002).[2]

---

[2] ORS 223.215(1)(a) provides:

"The installment application shall state that the applicant does thereby waive all irregularities or defects, jurisdictional or otherwise, in the

In June 1998, taxpayers brought this claim in the Tax Court under ORS 305.583(1),[3] seeking a determination that the charge for the Dartmouth LID was actually a "tax" under Article XI, section 11b, rather than an assessment for a local improvement. In addition, taxpayers claimed that the waiver requirements of ORS 223.215(1)(a) and *former* TMC 13.04.070(b)(3)(A) (1996) violated their right to petition the government for redress of grievances under Article I, section 10, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution.

On opposing motions for summary judgment, the Tax Court concluded that the charge for the Dartmouth LID was not a "tax" under Article XI, section 11b, because the charge conformed to the exemption under that section for an assessment for a local improvement. *Martin*, 14 OTR 517. The Tax Court further concluded that, because the charge did not constitute a tax, the court lacked jurisdiction to hear taxpayers' constitutional challenges to the waiver requirements of ORS 223.215(1)(a) and *former* TMC 13.04.070(b)(3)(A) (1996). *Id.* at 523. The Tax Court granted summary judgment in favor of the city. *Id.* at 524.

---

proceedings to cause the local improvement for which the final assessment is levied and in the apportionment of the actual cost of the local improvement."

*Former* TMC 13.04.070(b)(3)(A) (1996) similarly provided, in part:

"[t]he written application shall * * * [s]tate that the applicant and property owner does waive all irregularities or defects, jurisdictional or otherwise, in the proceedings to cause the improvement to be constructed or made for which the assessment is levied and in the apportionment of the cost[.]"

Under ORS 223.210(2), a property owner generally must file an application to make installment payments within 10 days after the notice of the final assessment. *See* ORS 223.210(2) (property owner may file application to pay assessment in installments within 10 days after notice of final assessment); *see also* ORS 223.210(3) (governing body has option to allow installment application to be filed more than 10 days after final notice of assessment). In this case, however, the parties have stipulated to toll the period within which taxpayers must apply for installment payments until this challenge is resolved.

[3] ORS 305.583(1) provides:

"An interested taxpayer may petition the regular division of the Oregon Tax Court to determine the *effect of the limits of section 11 or 11b, Article XI of the Oregon Constitution on any tax, fee, charge or assessment* imposed by a unit of government."

(Emphasis added.)

■ On appeal, taxpayers assign as error the Tax Court's denial of their motion for summary judgment and its grant of the city's opposing motion for summary judgment.[4] We review the Tax Court's ruling to determine whether either party is entitled to judgment as a matter of law. *See* TCR 47 C (summary judgment appropriate when no genuine issue as to any material fact exists and moving party entitled to judgment as matter of law). We begin with those issues that arise under Article XI, section 11b, of the Oregon Constitution.

■ As noted, Article XI, section 11b, is a constitutional provision that the voters adopted by initiative petition that sets dollar limits upon taxes that government imposes upon real property. Under Article XI, section 11b(2)(b), a "tax" is

"any charge imposed by a governmental unit upon property or upon a property owner as a direct consequence of owner-ship of that property *except* incurred charges and *assess-ments for local improvements.*"

(Emphasis added.) Article XI, section 11b(2)(d), defines a "local improvement" as

"a capital construction project undertaken by a govern-mental unit

"(i) which provides a special benefit only to specific properties or rectifies a problem caused by specific proper-ties, and

"(ii) the costs of which are assessed against those prop-erties in a single assessment upon the completion of the project, and

---

[4] Generally, an order denying a motion for summary judgment is not appeal-able. *Carter v. U.S. National Bank*, 304 Or 538, 545, 747 P2d 980 (1987). However, under certain circumstances, such as those arising in this case, this court may review an order denying summary judgment on an appeal following the entry of final judgment. *See To v. State Farm Mutual Ins.*, 319 Or 93, 873 P2d 1072 (1994) (in appeal from final judgment entered after grant of summary judgment, court reviewed and reversed trial court's denial of cross-motion for summary judgment); *see also Payless Drug Stores v. Brown*, 300 Or 243, 248, 708 P2d 1143 (1985) (court may not review denial of motion for summary judgment in appeal from judgment after trial, unless motion raised only issue of law about which facts found at trial would have made no difference).

"(iii)   for which the payment of the assessment plus appropriate interest may be spread over a period of at least ten years.

"The total of all assessments for a local improvement shall not exceed the actual costs incurred by the governmental unit in designing, constructing and financing the project."

Taxpayers do not dispute that the charge for ·the Dartmouth LID resulted from a capital construction project that provided a special benefit to specific properties, including their property. For the reasons detailed below, however, taxpayers argue that the charge for the Dartmouth LID does not satisfy other criteria set out in the foregoing definition of "local improvement" and, thus, constitutes a "tax" subject to the limits of Article XI, section 11b. We address each of taxpayers' arguments in turn.

Citing Article XI, section 11b(2)(d)(iii), taxpayers first contend that the charge for the Dartmouth LID does not qualify under the exemption for an assessment for a local improvement because the city will not permit taxpayers to pay that charge over a ten-year period unless taxpayers waive all irregularities or defects in the local improvement proceedings and cost apportionment, as required under ORS 223.215(1)(a).[5] The city responds that, in *Ester v. City of Monmouth*, 322 Or 1, 903 P2d 344 (1995), this court specifically held that, in adopting Article XI, section 11b, the voters did not intend to change the law governing local improvements. Thus, the city argues, under *Ester*, because the waiver requirement of ORS 223.215(1)(a) long has been a condition to the option to pay an assessment for a local improvement in installments under statutory law, the voters did not intend to preclude the application of that condition in incorporating the option to pay an assessment in installments as a constitutional requirement for a project to qualify as a "local improvement" under Article XI, section 11b(2)(d).

Because the city asserts that *Ester* resolves taxpayers' claim, we begin our discussion by examining the holding

---

[5] The   city   imposed   that   requirement   pursuant   to   *former*   TMC 13.04.070(b)(3)(A) (1996), which, as noted previously, is based upon ORS 223.215(1)(a).

of *Ester*. In *Ester*, this court considered whether, by including the phrase "which provides a special benefit only to specific properties" in the definition of local improvement in Article XI, section 11b(2)(d)(i), the voters intended to exclude from that definition any project that also provided a general benefit to the community. 322 Or at 8. Respecting that phrase, this court concluded that the voters did not intend to alter the historical understanding that local improvements ordinarily provide both a special benefit to certain properties and a general benefit to the community. *Id.* at 13. In *Ester*, however, the court did not consider whether the other criteria set out in Article XI, section 11b(2)(d), altered the meaning of the term "local improvement." Thus, in asserting that *Ester* stands for the proposition that Article XI, section 11b, did not change the law governing local improvements in any respect, the city overstates this court's holding in that case.[6]

Having explained that *Ester* does not dispose of taxpayers' claim, we turn to the question whether the city's imposition of the waiver requirement set out in ORS 223.215(1)(a) prevents the charge for the Dartmouth LID from qualifying as an assessment for a local improvement under Article XI, section 11b. Because Article XI, section 11b, is a voter-initiated constitutional provision, our task in interpreting the meaning of that provision is to discern the intent of the voters. *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993). The text of the provision itself provides the best evidence of the voters' intent. *Id.* In addition, this court also considers the context of the provision, including other relevant constitutional provisions, case law from this court, and any relevant statutory framework in effect at the time when the voters adopted the provision. *See Flavorland Foods v. Washington County Assessor*, 334 Or 562, 569-75, 54 P3d 582 (2002) (considering those as part of context of initiated constitutional provision). If the voters'

---

[6] This court's statements in *Ester* that "it is clear that the voters intended to exclude *all proper assessments* for local improvements from the property tax restrictions" and that "we now hold that the term 'local improvement' refers to a *local improvement authorized under ORS chapter 223*" are not to the contrary. 322 Or at 13, 13 n 7 (emphasis added). Those statements set out only a summary of the court's earlier conclusion—that the voters did not intend to change the historical understanding that local improvements ordinarily provide both a special benefit to certain properties and a general benefit to the community.

intent is clear from the text and context of the initiated constitutional provision, then the court does not look further. *Roseburg School Dist.*, 316 Or at 378.

Article XI, section 11b(2)(d)(iii), identifies one criterion for a charge to qualify as an assessment for a local improvement, namely that "the payment of the assessment plus appropriate interest may be spread over a period of at least ten years." Or Const, Art XI, § 11b(2)(d)(iii). Because that phrase does not use words that carry any special legal meaning, we assign those words their plain, natural, and ordinary meaning. *See Coultas v. City of Sutherlin*, 318 Or 584, 588-89, 871 P2d 465 (1994) (court gives words of common usage their ordinary meaning in interpreting voter-initiated constitutional provisions). The ordinary meaning of the word "may" is "have liberty to." *Webster's Third New Int'l Dictionary* 1396 (unabridged ed 1993).

The parties agree, as do we, that, under the text of Article XI, section 11b(2)(d)(iii), a charge qualifies as an assessment for a local improvement only if the governing body has provided the property owner with the option to pay the charge over a period of at least ten years. Taxpayers, however, contend that the text of that provision does not allow the governing body to impose any conditions upon that option, including the condition set out in ORS 223.215(1)(a) that the property owner waive all irregularities in the local improvement proceedings and cost apportionment. We disagree.

As noted, the plain meaning of the phrase "may be spread" in Article XI, section 11b(2)(d)(iii), suggests that the property owner must have the "liberty" to spread the payment of an assessment for a local improvement over a period of at least ten years. The "liberty" to spread payments over a ten-year period, however, is not the same as an unconditional right to that payment option. Instead, the phrase "may be spread" supports only the conclusion that the voters intended to require the *availability* of a ten-year payment option, which ORS 223.215(1)(a) does not deny, before a charge may qualify as an assessment for a local improvement within the meaning of Article XI, section 11b. We have not found, and taxpayers have not suggested, anything else in the text of

Article XI, section 11b, that demonstrates that the voters intended to limit the authority of a governing body to impose conditions that are consistent with the ten-year payment option.

The context of Article XI, section 11b(2)(d)(iii), also does not support taxpayers' argument. Long before the voters adopted Article XI, section 11b, the statutory law governing local improvements provided the option to pay an assessment for a local improvement on an installment basis. *See* ORS 223.210 (providing that property owner may apply to pay local improvement assessment in installments); *see also* The Codes and Statutes of Oregon, title XXVII, ch V, § 2727 (Bellinger & Cotton 1902) (same). Thus, in requiring the availability of an installment payment option, Article XI, section 11b(2)(d)(iii), incorporates into the constitutional definition of "local improvement" a provision that was well-established under statutory law. Under that statutory law, the waiver requirement set out in ORS 223.215(1)(a) always has been a condition to a property owner's exercise of the installment payment option. *See* The Codes and Statutes of Oregon, title XXVII, ch V, § 2727 (Bellinger & Cotton 1902) (application to pay assessment in installment must state waiver of irregularities or defects in local improvement proceedings and cost apportionment).

We presume that the voters were aware that the installment payment option was so conditioned under statutory law. *Cf. State v. Waterhouse*, 209 Or 424, 436, 307 P2d 327 (1957) (court presumes legislature's awareness of existing law). Because nothing in the text of Article XI, section 11b, demonstrates that the voters intended to change the nature of that option, the text and context of Article XI, section 11b, suggest that the voters did not intend to alter the authority of a governing body to condition a property owner's installment payment option upon the waiver requirement set out in ORS 223.215(1)(a).[7] This court, however, previously

---

[7] Taxpayers contend that the context of Article XI, section 11b, as an initiative that severely limits the ability of a governing body to impose taxes upon real property, supports their reading of Article XI, section 11b(2)(d)(iii). *See Ester*, 322 Or at 12 n 6 (context of Article XI, section 11b, makes clear that voters intended to limit property taxes severely). However, as this court explained in *Ester*, it does not follow from that context that the voters intended to limit the authority of a governing

has stressed that it will not conclude lightly that the voters' intent is so clear from text and context of a provision that further inquiry is unnecessary. *See Shilo Inn v. Multnomah County*, 333 Or 101, 117, 36 P3d 954 (2001), *modified on recons on other grounds*, 334 Or 11, 45 P3d 107 (2002) (so stating). Therefore, because there is some room for doubt, and because taxpayers argue that the history of Article XI, section 11b, supports their reading of Article XI, section 11b(2)(d)(iii), we also shall consider the history of Article XI, section 11b, before ending our inquiry. *See id.* (describing that method of analysis).

The history of an initiated constitutional provision, such as Article XI, section 11b, includes any information that was available to the public at large at the time when the measure was adopted that illuminates the voters' understanding of that provision. *Id.* at 129-30. In this case, the only material that we have found, or that taxpayers have suggested, that assists us in ascertaining the voters' intent as to the meaning of Article XI, section 11b(2)(d)(iii), is the explanatory statement of Article XI, section 11b, from the voters' pamphlet. That statement described the relevant part of the provision as:

> "The limits in this measure DO NOT APPLY to * * * assessments for capital construction that provides [*sic*] a special benefit to the property and *that can be paid off over at least ten years*[.]"

Official Voters' Pamphlet, Primary Election, November 6, 1990, 33 (capitalization in original; emphasis added).

The phrase "can be paid off" in the explanatory statement suggested to the voters that a ten-year payment option would be available to a property owner if a charge were to qualify as an assessment for a local improvement. That phrase, however, again did not suggest to the voters that the proposed measure would have any effect upon the authority of a governing body to impose conditions that were consistent with that payment option. Thus, although the foregoing explanation confirms our earlier conclusion that

body respecting forms of revenue generation that Article XI, section 11b, expressly excludes from its limitations. *Id.*

the voters intended to require the availability of a ten-year payment option for a charge to qualify as an assessment for a local improvement, that explanation does not support taxpayers' contention that the voters intended that the installment payment option be free of any conditions, including the waiver requirement set out in ORS 223.215(1)(a).

In sum, after considering the text, context, and relevant history of Article XI, section 11b, we find nothing that supports taxpayers' argument that, to qualify under the exemption for an assessment for a local improvement, the city may not impose the waiver requirement set out in ORS 223.215(1)(a). In adopting Article XI, section 11b(2)(d)(iii), we determine that the voters intended to require the availability of a ten-year payment option for a charge to qualify under the exemption for an assessment for a local improvement. The city's imposition of the waiver requirement set out in ORS 223.215(1)(a) does not deprive taxpayers of that payment option. We therefore conclude that the Tax Court's decision as to that matter was not in error.

■ Taxpayers next argue that the Dartmouth LID fails to qualify as an assessment for a local improvement under Article XI, section 11b(2)(d), because the city did not assess the entire Waremart and Costco parcels, which taxpayers contend also received a special benefit from Dartmouth Street. The city responds that the Tax Court correctly determined that it lacked jurisdiction to consider that argument on the merits because taxpayers' claim presents a challenge to the LID under ORS chapter 223, rather than a question involving Article XI, section 11b.

The relevant part of Article XI, section 11b(2)(d), provides:

"[a] 'local improvement' is a capital construction project undertaken by a governmental unit * * *

"(i) which provides a *special benefit only to specific properties or rectifies a problem caused by specific properties*, and

"(ii) the costs of which are assessed against *those properties* in a single assessment upon the completion of the project[.]"

(Emphasis added.) Taxpayers argue that the term "those properties" in Article XI, section 11b(2)(d)(ii), refers to the specific properties that received a special benefit from the project. According to taxpayers, to conform to that definition, the city must assess *all* specially benefitted properties to qualify as an assessment for a local improvement.

We agree with taxpayers that the term "those properties" in Article XI, section 11b(2)(d)(ii), refers to the properties defined in Article XI, section 11b(2)(d)(i), that is, those specific properties that received a special benefit from the project. As explained below, however, we do not agree that, by including the requirement in Article XI, section 11b(2)(d)(ii), that the costs of a project be assessed against "those properties" receiving a special benefit, the voters intended to address the question of *which* properties received a special benefit such that they should be included in the assessment for the costs of that project.

As discussed previously, in *Ester*, 322 Or 1, this court considered the meaning of the phrase "special benefit only to specific properties" in Article XI, section 11b(2)(d)(i). This court held that the voters intended to adopt the established, legal meaning of the term "special benefit" in including that term in the definition of "local improvement" in Article XI, section 11b(2)(d). *Id.* at 13. Therefore, the question whether the project at issue in *Ester* had provided a special benefit to the taxpayer's property was not a question involving the effect of Article XI, section 11b, but, instead, constituted a challenge to the local improvement district under ORS chapter 223. *Id.*

That holding applies equally in this context. The determination of which properties receive a "special benefit" from a particular project controls a governing body's decision about which properties it should include in an assessment for the costs of a local improvement. *See* ORS 223.389 (describing procedure for making assessments for local improvements); *see also Stanley v. City of Salem*, 247 Or 60, 64, 427 P2d 406 (1967) ("Special assessments can be levied upon property to the extent that property is specially benefited by the improvement for which the levy is assessed."). Under *Ester*, a challenge to the determination of "special benefit" is

a challenge to the local improvement under ORS chapter 223, rather than Article XI, section 11b. Thus, to determine whether a project conforms to the requirement of Article XI, section 11b(2)(d)(ii), that a governing body assessed its costs only against "those properties" that received a special benefit from the project, this court asks only if the governing body has limited its assessment of costs to the properties identified under Article XI, section 11b(2)(d)(i), that is, properties that received a special benefit. Whether other properties not included in the assessment also received a special benefit, and, as a consequence, the governing body should have included them in the assessment, is not a question involving the effect of Article XI, section 11b; rather, that question raises a challenge to the local improvement under ORS chapter 223. We therefore conclude that the Tax Court's decision that it lacked jurisdiction to consider taxpayers' challenge on the merits was not in error.[8]

■■■ Taxpayers finally contend that the charge for the Dartmouth LID does not qualify as an assessment for a local improvement under Article XI, section 11b, because the city included attorney fees and litigation costs associated with the project in its total project costs, including attorney fees and litigation costs stemming from the condemnation proceeding. According to taxpayers, under the text of Article XI, section 11b(2)(d), the city may not include such costs if the charge is to qualify as an assessment for a local improvement.

The relevant part of Article XI, section 11b(2)(d), provides:

> "The total of all assessments for a local improvement shall not exceed the *actual costs incurred by the governmental unit in designing, constructing and financing the project.*"

(Emphasis added.)

---

[8] Because taxpayers' claim is a challenge to the meaning of "local improvement" in Article XI, section 11b, and is a question of first impression, we note, as in *Ester*, that we do not suggest that taxpayers improperly brought this claim in the Tax Court. Under ORS 305.580(1), the exclusive remedy for a taxpayer who thinks that a charge exceeds the limits of Article XI, section 11b, is a petition to the Tax Court. *See Ester*, 322 Or at 13 n 7 (stating same).

As previously noted, when interpreting the text of an initiated constitutional provision, this court gives words of common usage their plain, natural, and ordinary meaning. *Coultas*, 318 Or at 588-89. The plain, natural, and ordinary meaning of "actual" in this instance is "existing in fact or reality," as opposed to "ideal and hypothetical." *Webster's* at 22. In that regard, Article XI, section 11b(2)(d), requires that a governing body limit an assessment for a local improvement to those costs that the governing body in fact has incurred and are not speculative. The word "cost" ordinarily means "the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered." *Webster's* at 515. Under those definitions, we hold that the attorney fees and litigation costs that the city included in the assessment for the Dartmouth LID constitute "actual costs."

We next consider whether attorney fees and litigation costs associated with the condemnation proceeding were "incurred by the governmental unit in *designing, constructing and financing the project.*" Or Const, Art XI, § 11b(2)(d) (emphasis added). The ordinary meaning of "constructing" is "to form, make, or create by combining parts or elements." *Webster's* at 489. In this case, the city's acquisition of the property upon which to build the Dartmouth Street extension was a necessary part of the creation of Dartmouth Street. Thus, under the foregoing definition of "constructing," the city's attorney fees and litigation costs from the condemnation proceeding constituted actual costs that the city incurred in "designing, constructing and financing the project." Because the text of Article XI, section 11b(2)(d), is clear, and nothing in the context of Article XI, section 11b, suggests a different reading of that provision, we conclude that the Tax Court's decision as to that matter also was not in error.[9]

---

[9] Taxpayers also point out that, in the legislation that implemented Article XI, section 11b, the legislature did not include attorney fees in its definition of "actual costs." *See* ORS 310.140(10) (omitting attorney fees from definition of "actual cost"). However, as taxpayers acknowledge, ORS 310.140(10) provides that the list of costs included in that provision is not exhaustive. *See* ORS 310.140(10) ("actual costs" not limited to enumerated costs). In addition, this court previously has stated that subsequently enacted, related legislation is not evidence of the voters' intent in adopting an initiated constitutional provision. *Ester*, 322 Or at 10 n 5 (so stating).

■ We now turn to taxpayers' other constitutional challenges. As noted, taxpayers claim that the city's imposition of the waiver requirements of ORS 223.215(1)(a) and *former* TMC 13.04.070(b)(3)(A) (1996) violated their right to petition the government for redress of grievances under Article I, section 10, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution. On appeal, taxpayers argue that the Tax Court erred when it dismissed those challenges for lack of jurisdiction and ask this court to declare that the waiver requirement is unconstitutional.

■ Although the Tax Court is a court of "general jurisdiction" and has the same powers as a circuit court, if the question before the Tax Court is not a challenge to, or one arising under, the tax laws of Oregon, it is not within the subject matter jurisdiction of the Tax Court. *See* ORS 305.410(1) ("[T]he tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state."); *see also Sanok v. Grimes*, 294 Or 684, 690-97, 662 P2d 693 (1983) (outlining scope of Tax Court's jurisdiction). Here, taxpayers raise facial state and federal constitutional challenges to the statutory waiver requirements of ORS 223.215(1) and *former* TMC 13.04.070(b)(3)(A) (1996). Those challenges do not "arise under the tax laws" of this state. Therefore, we conclude that the Tax Court correctly dismissed those constitutional challenges for lack of jurisdiction.

The judgment of the Tax Court is affirmed.